**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**


| | |
|---|---|
| **MICHAEL STEPHEN BALLARD,** | 05-CV-54-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **PORTLAND GENERAL ELECTRIC,** | |
| Defendant. | |


**GLENN SOLOMON**
2125 S.W. Fourth Avenue
Suite 600
Portland, OR  97201
(503) 241-3508

      Attorney for Plaintiff

**MARTIN C. DOLAN**
Dolan Griggs LLP
1130 S.W. Morrison Street
Suite 630
Portland, OR  97205
(503) 228-7500

      Attorneys for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion for Summary Judgment (#21). For the reasons that follow, the Court **GRANTS** Defendant's Motion.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

Plaintiff Michael Stephen Ballard is an African American who worked for Defendant Portland General Electric (PGE) as a Journeyman Lineman/Cable Splicer in the Underground Unit from 1996 to December 2004. Rod Lewis was the general foreman of the Underground Unit from December 2003 to mid-June 2004.

On March 9, 2004, Plaintiff re-aggravated a neck injury while working. On March 26, 2004, Plaintiff stayed home from work on his doctor's advice due to this injury. Lewis called Plaintiff's home, but Plaintiff did not answer and did not have an answering machine. On March 26, 2004, Plaintiff called John Martinez, Lewis's supervisor, at 10:00 or 11:00 a.m, which was two to three hours after Plaintiff's shift started. Plaintiff told Martinez that he was out sick due to his injury. Martinez conveyed Plaintiff's message to Lewis.

The Collective Bargaining Agreement (CBA) between PGE and its employees requires ill or injured employees to call fifteen minutes before the start of their shift if they are going to miss

2 - OPINION AND ORDER

work.  If employees fail to give notice without good cause, they will only be paid beginning the hour following receipt of the required notice.  Because Plaintiff did not call fifteen minutes before his shift began, Lewis determined Plaintiff should not be paid for his time off.

Plaintiff returned to work a few days after March 26, 2004, and brought a doctor's note explaining his absence.  Lewis consulted Dan Rendine, an employee in PGE's Human Resources Department.  After Rendine determined Plaintiff's absence should not be considered unexcused, and Plaintiff should be paid, PGE paid Plaintiff for his time off.

On April 21, 2004, Plaintiff did not report to work or call fifteen minutes before the start of his shift.  Plaintiff called Lewis later in the day and told him that he had slept through his alarm.  Lewis considered the absence unexcused and verbally warned Plaintiff that further unexcused absences could result in a written warning, which is the beginning of the disciplinary process at PGE.  PGE paid Plaintiff for seven hours on April 21, 2004.

In April 2004, Plaintiff passed Lewis's office, noticed Lewis's door was open, and saw a noose hanging on Lewis's coat rack.  Later the same day, Plaintiff went back to Lewis's office and told Lewis "that's a really nice coat rack you have there."  Lewis responded, "Yeah, it is, isn't it."  Plaintiff talked to

3 - OPINION AND ORDER

Phil Brittain, a co-worker, about the noose, and Brittain talked to Wade Baxter, another employee, about the noose. Baxter told Lewis that Plaintiff was unhappy about the noose and believed it was racist. Lewis removed and untied the noose.

Lewis reported the incident to Martinez and also informed Rendine. DeAngeloa Wells, a Human Resources Manager, instructed Rendine to conduct an investigation. During the investigation, Lewis and Baxter explained they had been joking about the fact that many of the Underground crew were unhappy with Lewis as their general foreman. Lewis told Baxter there was not any way he could keep the crew happy, and Baxter joked Lewis should hang himself. Baxter made Lewis a noose from rope and put it around Lewis's neck. Lewis went back to his office and put the noose on his coat rack. Rendine concluded neither Lewis nor Baxter intended the noose to be racially offensive, the noose was not directed at Plaintiff, and Lewis removed the noose as soon as Plaintiff's distress was brought to Lewis's attention. Rendine held a meeting with Plaintiff, Lewis, and Baxter; counseled Lewis and Baxter about racist connotations that can be associated with a noose; and informed all of them about the results of his investigation. Lewis and Baxter apologized to Plaintiff.

PGE rotates its employees to various assignments in the Underground Unit. Lewis assigned Plaintiff to the Network crew at various times from January 2004 until Plaintiff's resignation

in December 2004. Lewis also rotated other employees to the Network crew during his six months as foreman. Although members of the Network crew do not receive overtime, Plaintiff received overtime pay in 2004 that was average for the Underground Unit.

On May 20, 2004, Plaintiff sent an email to Rendine in which Plaintiff objected to Lewis's verbal warning regarding Plaintiff's absences in March and April 2004 and requested Rendine to "rescind the Verbal Warning." On May 27, 2004, Rendine responded to Plaintiff's email and informed him that a verbal warning did not constitute a disciplinary action, no record of a disciplinary action was in Plaintiff's file, and Lewis merely intended to inform Plaintiff that future unexcused absences could result in disciplinary action.

On July 19, 2004, Plaintiff filed a complaint in Multnomah County Circuit Court in which he alleged Defendant discriminated against him on the basis of his race and color in violation of Or. Rev. Stat. § 659A.030(b)(1) and for filing a workers' compensation claim in violation of Or. Rev. Stat. § 659.040. On August 17, 2004, Defendant moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

On October 27, 2004, Plaintiff filed an amended complaint in which he again alleged Defendant discriminated against him on the basis of his race and color in violation of Or. Rev. Stat.

§ 659A.030(b)(1) and for filing a workers' compensation claim in violation of Or. Rev. Stat. § 659.040. On November 8, 2004, Defendant filed a motion to make more definite and certain, which the Multnomah County Circuit Court granted.

Plaintiff resigned from PGE on December 5, 2004.

On January 7, 2005, Plaintiff filed a second amended complaint in which he alleged only that Defendant "retaliated against [Plaintiff] for his complaint about racially insulting behavior" in violation of 42 U.S.C. § 1981. On January 14, 2005, Defendant removed the action to this Court on the basis of federal question jurisdiction.

On September 20, 2005, Defendant filed the Motion for Summary Judgment now before the Court in which it contends Plaintiff was not subject to any adverse employment action, and, in any event, Defendant had legitimate, nondiscriminatory reasons for its actions.

## **STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the

6 - OPINION AND ORDER

nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

**DISCUSSION**

I.   **42 U.S.C. § 1981**

Section 1981 provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

"A plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a . . . claim under Title VII. . . ." *Equal Employment Opportunity Comm'n v. Inland Marine Indus.*, 729 F.2d 1229 n.7 (9th Cir. 1984)(citing *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)).

The burden-shifting analysis of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to claims of discrimination brought under § 1981. *Inland Marine*, 729 F.2d at 1234. Initially, therefore, the plaintiff has the burden of establishing a *prima facie* case of racial discrimination. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. Finally, if the defendant carries its burden, the plaintiff must prove by a preponderance of the evidence that the defendant's reasons were merely a pretext for discrimination. *Burdine*, 450 U.S. at 252-

8 - OPINION AND ORDER

53. *See also McDonnell Douglas Corp.*, 411 U.S. at 802-04. Although the *McDonnell Douglas/Burdine* formula shifts the burden of producing evidence, it does not relieve a plaintiff of his ultimate burden to prove discriminatory intent by a preponderance of the evidence. *Burdine*, 450 U.S. at 253 (citation omitted).

## II. Plaintiff's Retaliation Claim

To establish a *prima facie* case of retaliation under § 1981, a plaintiff must establish:

> (1) [he] engaged in a protected activity, such as the filing of a complaint alleging racial discrimination, (2) the [defendant] subjected [him] to an adverse employment action, and (3) "a causal link exists between the protected activity and the adverse action."

*Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir. 2003)(quoting *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).

### A. Plaintiff Has Not Shown an Adverse Employment Action by Defendant.

Plaintiff alleges in his Complaint that he was subjected to adverse employment action when Defendant retaliated against him for complaining about the noose.

An adverse employment action is one which "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington v. Ellerth*, 524 U.S. 742, 761 (1998).

9 - OPINION AND ORDER

Plaintiff contends he was subject to an adverse employment action when (1) Lewis verbally warned Plaintiff that he would be subject to disciplinary action if he again was absent from work without calling fifteen minutes before his shift began, (2) Lewis assigned Plaintiff to the Network crew, and (3) Plaintiff was required to turn in his company cell phone.

In his email to Plaintiff on May 27, 2004, Rendine made clear that Lewis's verbal warnings did not constitute a disciplinary action under PGE's policies, and there was not any record of Lewis's warnings in Plaintiff's file. Plaintiff does not offer any contrary evidence. The Court, therefore, concludes these verbal warnings did not constitute adverse employment actions by Defendant.

In addition, the record reflects Lewis assigned Plaintiff to the Network crew intermittently both before and after Plaintiff complained about the noose. Again, Plaintiff does not offer any contrary evidence or any evidence to connect this work assignment to an illegal retaliatory motive. The Court, therefore, concludes Plaintiff has not shown any causal connection between his complaint and his assignment to the Network crew.

Finally, Defendant's requisition of Plaintiff's company cell phone was not an adverse employment action akin to "hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits." Plaintiff does not offer any authority to the contrary. The Court, therefore, concludes Defendant's requisition of Plaintiff's company cell phone does not constitute an adverse employment action.

Even if, Plaintiff's complaint about the noose was a protected activity, Plaintiff has not shown he was subject to any adverse employment action by Defendant that is causally related to this complaint. Accordingly, the Court concludes Plaintiff has not established a *prima facie* case of retaliation in violation of § 1981.

**B. Defendant Has Articulated Legitimate, Nondiscriminatory Reasons for Its Actions.**

Even if Plaintiff had established a *prima facie* claim of retaliation, Defendant contends it has legitimate, nondiscriminatory reasons for its actions.

As noted, the CBA requires employees who are unable to report to work due to illness or injury to call their immediate supervisors fifteen minutes before their shift begins. If employees do not do so,

> [employees'] disability benefits will not start until the next following hour after said notice is finally received . . . . No disability benefits shall be payable for any period of absence in which an employee shall have failed, without good cause, to give prompt notice as herein provided.

Wells Decl., Ex. D at 2. Plaintiff does not dispute he failed to

call Lewis fifteen minutes before Plaintiff's shift was scheduled to begin on either March 26 or April 21, 2004.  Although Plaintiff ultimately was paid for both days, Lewis had a legitimate, nondiscriminatory reason for informing Plaintiff that he was in danger of receiving a written warning if he failed to comply with PGE's absence policy again.

With respect to Plaintiff's assignment to the Network crew, Lewis states in his Declaration that he assigned Plaintiff and others to the Network crew because he believed it was important for everyone to be familiar with Network in case of an emergency.  Lewis also stated he believed Plaintiff wanted to be a foreman and would have a better chance to develop foreman experience on the Network crew.  The Court concludes Defendant's reasons on their face are legitimate and nondiscriminatory.

Finally, PGE gave company cell phones only to foremen and the shop steward of the Underground Unit, and any other company cell phones were additional expenses to the department's budget.  Thus, when Lewis apparently determined it was unfair to the other journeymen on the Underground Unit for Plaintiff, who was not a foreman or a shop steward, to have a company cell phone even though he had received one before Lewis became foreman of the Underground Unit, Lewis had legitimate, nondiscriminatory reasons to require Plaintiff to turn in his company cell phone.

12 - OPINION AND ORDER

C.   **Plaintiff Has Not Provided Any Evidence to Rebut Defendant's Legitimate, Nondiscriminatory Reasons for Its Actions.**

A plaintiff who relies on circumstantial evidence must set forth "specific and substantial evidence" of pretext. *Manatt*, 339 F.3d at 802 (citing *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001)). Here Plaintiff admits he relies only on his own belief that he was retaliated against based on his race. In fact, Plaintiff stated numerous times in his deposition that he had no facts to substantiate his belief that Defendant retaliated against Plaintiff for reporting the noose incident. Pl.'s Dep. at 81, 82, 86.

Subjective beliefs alone, however, are not sufficient to establish that a genuine issue of material fact exists as to whether Defendant's stated legitimate, nondiscriminatory reasons are pretextual. *See Corpuz v. Sec'y, Dep't of Health and Human Serv.*, No. CIV. 97-1663-ST, 1999 WL 562693, at *6 (D. Or. July 30, 1999)(If the defendant presents a legitimate, nondiscriminatory reason for its actions, the presumption raised by the plaintiff's *prima facie* case is rebutted and the burden shifts to the plaintiff to show the defendant's reason "is a pretext for another motive which is discriminatory.")(citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

Thus, Plaintiff's mere subjective belief that Defendant

13 - OPINION AND ORDER

retaliated against him for reporting the noose incident is insufficient to defeat summary judgment because it does not establish that a fact question exists as to whether the reason given by Defendant for its actions is pretext for a discriminatory motive. *See Nelson v. Pima Cmty. Coll.,* 83 F.3d 1075, 1081 (9th Cir. 1996)("Mere allegation and speculation" is insufficient to establish a causal connection). *See also Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988)(purely conclusory allegations of alleged discrimination will not bar summary judgment).

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim.

**III. Possible Hostile Work Environment Claim**

Although Plaintiff appears to allege only a claim for retaliation in his Second Amended Complaint, Plaintiff states in his Response to Defendant's Motion for Summary Judgment that his "main allegation is that plaintiff (Ballard) was subjected to a hostile work environment based on his race and color and was subjected to retaliation when he complained." It appears, therefore, Plaintiff also may be asserting a claim for hostile work environment.

To establish a *prima facie* hostile work environment claim under § 1981, a plaintiff

> must raise a triable issue of fact as to whether (1) he was "subjected to verbal or physical

>           conduct" because of h[is] race, (2) "the conduct
>           was unwelcome," and (3) "the conduct was
>           sufficiently severe or pervasive to alter the
>           conditions of [Plaintiff's] employment and create
>           an abusive work environment."

*Manatt*, 339 F.3d at 798 (quoting *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)). If a plaintiff satisfies these elements, the employer is liable for failing to remedy or to prevent a hostile work environment that management-level employees knew, or in the exercise of reasonable care, should have known existed. *E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504, 1515-16 (9th Cir. 1989), *overruled on other grounds by Burrell v. Star Nursery, Inc.*, 170 F.3d 951 (9th Cir. 1999).

To determine whether a work environment is objectively hostile, the court must consider all of the circumstances surrounding the offensive conduct including the frequency of the discriminatory conduct and its severity, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). *See also Candelore v. Clark Co. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992)(isolated incidents of sexual horseplay are insufficient to support hostile work environment claim).

To support his hostile work environment claim, Plaintiff relies on the noose incident and a general air of hostility. The

conduct described by Plaintiff, however, is not severe nor pervasive enough to establish a hostile work environment claim even when viewing the facts in the light most favorable to Plaintiff. Although the noose incident was, at best, in poor taste, Plaintiff has not offered any evidence that this single act was aimed at or intended to be seen by Plaintiff. In fact, this single act does not demonstrate a hostile work environment. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Manatt*, 339 F.3d at 798 (internal citation omitted). *See also Jordan v. Clark*, 847 F.2d 1368, 1374-75 (9th Cir. 1988)(court found no hostile work environment existed on the basis of "off-color" jokes in the workplace); *Harris*, 510 U.S. at 20 ("mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.")(quotations omitted); *Haskins v. Owen-Corning Fiberglass Corp.*, 811 F. Supp. 534, 538 (D. Or. 1992)("Racial comments that are merely part of casual conversation . . . [or] are accidental, or are sporadic do not trigger Title VII's sanctions."); *Candelore*, 975 F.2d at 590 (isolated incidents of sexual horseplay are insufficient to render plaintiff's work environment hostile).

In addition to the absence of hostile acts, Plaintiff fails

to show Defendant's alleged conduct interfered with Plaintiff's work performance.  Finally, even if the acts alleged by Plaintiff rose to the level of creating a hostile work environment, Lewis, Rendine, and Wells took prompt action when Plaintiff complained of the noose incident.

The Ninth Circuit has held when "an employer knows or should know of [coworker] harassment, a remedial obligation kicks in." *Fuller v. City of Oakland*, 47 F.3d 1522, 1528 (9th Cir. 1995). "Such an employer will be liable for the hostile work environment created by the coworker unless 'the employer . . . take[s] adequate remedial measures in order to avoid liability.'"  *Star v. West*, 237 F.3d 1036, 1038 (9th Cir. 2001)(quoting *Yamaguchi v. United States Dep't of Air Force*, 109 F.3d 1475, 1482 (9th Cir. 1997)).  Although Plaintiff suggests Defendant should have done something more than counsel Lewis, the Ninth Circuit has held "counseling or admonishing the offender can constitute an adequate disciplinary response."  *Star*, 237 F.3d at 1039.

Based on this record, the Court finds Plaintiff has failed to establish that a material issue of fact exists as to a hostile work environment claim.  Accordingly, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's hostile environment work claim insofar as Plaintiff has brought such a claim.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant Portland General Electric's Motion for Summary Judgment (#21).

IT IS SO ORDERED.

DATED this 4th day of January, 2006.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge